**David Douglas JENNINGS, Appellant**

v.

**The STATE of Texas, Appellee**

**NO. 14-16-00062-CR, NO. 14-16-00063-CR, NO. 14-16-00064-CR**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed September 28, 2017

---

Wendell A. Odom, Jr. Houston, TX, for Appellant.

Eric Kugler, Houston, TX, for State.

Panel consists of Justices Boyce, Jamison, and Brown.

## OPINION

Martha Hill Jamison, Justice

Appellant David Douglas Jennings appeals his convictions on three counts of possession of child pornography. *See* Tex. Penal Code § 43.26. After the trial court denied appellant's motions to suppress evidence obtained as a result of the execution of a search warrant; appellant pleaded guilty. The trial court deferred adjudication and placed appellant on community supervision for ten years. In two issues, appellant contends that the affidavit in support of the search warrant failed to establish probable cause for the search and the salacious speech referenced in the affidavit was protected under the First Amendment. We affirm.

### Background

At the hearing on appellant's motion to suppress, the State presented a copy of the search warrant and its supporting affidavit. In the affidavit, Officer Joseph Roscoe of the Houston Police Department discussed his training and experience, linked appellant and his home to online conversations of a sexual nature with individuals purporting to be minors, and explained certain characteristic behaviors of people who have a sexual interest in children. Roscoe expressly concluded that appellant is a person who has a sexual interest in children and, therefore, among other things, appellant was likely to collect sexually explicit materials depicting children and keep them at his home.

Roscoe requested a warrant for the search of appellant's home and person as well as of the other two individuals residing in the home (apparently appellant's mother and sister). Among the items requested for seizure, Roscoe listed computers and related equipment and software. Roscoe also requested a forensic examination of any devices seized. The search warrant signed by the magistrate approved Roscoe's requests. During a subsequent search of appellant's home, officer's discovered computer equipment on which child pornography was found.

After the trial court denied appellant's three motions to suppress, appellant pleaded guilty on three counts of possession of child pornography. The trial court then signed findings of fact and conclusions of law.

### Probable Cause

■■■ In his first issue, appellant contends that the trial court erred in denying his motions to suppress because the affidavit used to obtain the search warrant failed to establish probable cause for the search. A magistrate may not issue a search warrant without first finding probable cause that a particular item will be found in a particular location. *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *Id.* It is a flexible and non-demanding standard. *Id.*

■■■ A trial court's ruling on a motion to suppress is typically reviewed under a bifurcated standard, affording almost total deference to the trial court's findings as to historical facts and reviewing de novo the trial court's application of the law to those facts. *Id.* at 271. However, when the trial court's ruling involves the determination of whether probable cause existed to support issuance of a search warrant, this determination is made from the four corners of the supporting affidavit and is not based on an assessment of any witness's credibility. *Id.* Instead, due to the constitutional preference for conducting searches pursuant to warrants over warrantless searches, we apply a highly deferential standard when reviewing a magistrate's decision to issue a warrant. *Id.* As long as the magistrate had a substantial basis for concluding that probable cause existed, we will uphold the magistrate's probable-cause determination. *Id.* We are not to view the affidavit

through hypertechnical lenses but instead analyze the affidavit with common sense, recognizing that the magistrate may draw reasonable inferences from the facts and circumstances contained in the affidavit's four corners. *Id.* When in doubt, we defer to all reasonable inferences that the magistrate could have made. *Id.* at 272.

### Requirements for evidentiary warrants under Texas law

■■ Search warrants are governed in Texas by chapter 18 of the Texas Code of Criminal Procedure. Tex. Code Crim. Proc. arts. 18.01-18.24. As an initial matter, we consider whether the supporting affidavit at issue was required to contain evidence establishing certain elements. Article 18.01(a)(8) authorizes search warrants "to search for and seize ... any property the possession of which is prohibited by law." Article 18.01(a)(10) authorizes search warrants "to search for and seize ... property or items ... constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense." If the warrant was issued under subsection (a)(10), then the supporting affidavit would need to satisfy the heightened requirements of article 18.01(c), which provides that a search warrant may not be issued under subsection (a)(10) unless the affidavit sets forth sufficient facts to establish probable cause that: (1) a specific offense has been committed, (2) the specifically described property or items that are to be searched for constitute evidence of that offense, and (3) the property or items are located at the place to be searched. These heightened requirements do not apply to warrants issued under article 18.02(a)(8). Appellant argues that the additional findings under (a)(10) are required here. The State maintains that the search warrant was issued under subsection (a)(8) and, therefore, the additional findings are not required.

Subdivision (a)(8) describes a specific category of property that may be searched and seized. *See Carmen v. State*, 358 S.W.3d 285, 297 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). In contrast, subdivision (10) is a catchall ground that applies only if subdivisions (1) through (9) and (12) do not. *See id.* Property subject to seizure under section 18.02(10) is often referred to as "mere evidence." *Id.*[1] Accordingly, a warrant issued under section 18.02(10) is known as an "evidentiary search warrant" or a "mere evidentiary search warrant." *Id.* The proper classification of a warrant is an issue of law determined by the language of the warrant and the statements made in the supporting affidavit. *Id.* at 298. If a warrant authorizes a search for both "mere evidence" and items listed under another ground for search and seizure, the warrant is not a mere-evidentiary search warrant. *Id.* We agree with the State that because the warrant at issue here was issued under subsection (a)(8), it is not a mere evidentiary search warrant and is not subject to the heightened requirements of 18.01(c).

We acknowledge that several items sought to be seized in the present case are not "property the possession of which is prohibited by law."[2] *See* Tex. Code Crim. Proc. Ann. art. 18.02(a)(8). However, other items sought to be seized clearly are.[3] The affidavit discussed possible crimes committed by appellant as well as particular evidence of those crimes but also discussed the likelihood of finding contraband, *i.e.*, child pornography, at appellant's residence. The search warrant itself echoed these assertions. Additionally, we note that

the trial court stated in its conclusion of law number 7 that issuance of the search warrant was supported by "multiple grounds enumerated in [article] 18.02(a)," and conclusion of law number 9 expressly found probable cause under subsection (a)(8). While the warrant authorizes the search for items that could only be characterized as "evidence," it also authorizes the seizure of property the possession of which is prohibited by law. *See id.; see also Zarychta v. State*, 44 S.W.3d 155, 167–68 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Accordingly, the warrant seeks more than "mere evidence." We conclude that additional findings under (a)(10) are not required.

**The affidavit**

In his affidavit, Roscoe stated that he began with HPD in 1997, has been investigating sex crimes involving minors since 2004, and has been assigned to the Houston Metro Internet Crimes Against Children Task Force since 2008. During this time, he has personally investigated over 600 allegations of sexual abuse of children, including cases involving direct contact and "technological exploitation." Roscoe holds Special Investigator Certifications for both Cyber Crimes and Sexual Assault and Family Violence. His training has included numerous classes on crimes against children, cyber crimes, and criminal behavior profiling. He has extensively studied the characteristics and behaviors of sex offenders.

Roscoe explained that the investigation of appellant began when HPD received a "cybertip" from the National Center for

---

1. "Mere evidence is evidence connected with a crime, but does not consist of fruits, instrumentalities, or contraband." *Joseph v. State*, 807 S.W.2d 303, 307 (Tex. Crim. App. 1991).

2. For example, the warrant sought utility bills, rent receipts, addressed envelopes, and keys to the premises.

3. For example, the warrant sought data or images of person[s] who appear to be under the age of 18, engaged in sexual acts or posed in a manner to elicit a sexual response.

Missing and Exploited Children (NCMEC), a congressionally authorized nonprofit organization that works with law enforcement agencies on issues relating to missing and sexually exploited children. HPD ultimately received three cybertips from NCMEC, all of which originated from a social networking website, Tagged.com, which provides online "chat" services. Each of the tips included a chat log from a conversation involving an Internet Protocol (IP) address that Roscoe was able to trace through Comcast Cable Communications to appellant, a Comcast subscriber, at his residence. Roscoe stated that IP addresses are "unique in the sense that no two users can have the exact same IP address at the same time." The Tagged.com account using that IP address at the time the cybertip was received also was registered in appellant's name and showed a location of Houston, Texas. Each of the chat logs was reproduced within Roscoe's affidavit.

In the conversation resulting in the first cybertip, both participants identified themselves as 13 years old. The person using the IP address traced to appellant (hereinafter "appellant") then asked what kind of underwear the other person was wearing and stated a desire to see the other person's genitals. An explicit conversation regarding sexual preferences and genitalia ensued, during which appellant again said he wished he could see the other person's penis. Appellant then asked, "if I gave u an email would u send me a pic?" The other person replied, "idk," which may have meant "I don't know," and then suggested they "Skype" instead of email. Appellant said that he did not have a webcam or cell phone. He further said, "if u dont wanna [sic] show me yours its [sic] ok," and "i bet it looks yummy tho [sic]." The conversation then turned to an explicit discussion regarding sexual intercourse. At one point, appellant stated "ugh tagged [apparently referencing the website] blocked my pic because they said it violated there [sic] terms." The other person asked, but appellant did not explain, what was in the picture he tried to post.

The second cybertip involved appellant and another individual representing to be 15 years old. This conversation again featured explicit discussion of sexual relations and genitalia. It included a proposal that the two of them engage in "sexting," but appellant wanted to do this on Tagged.com and the other person wanted to use cell phones. *See* Webster's New World College Dictionary 1332 (5th ed. 2014) (defining "sexting" as "the sending or exchanging of sexually explicit text messages or images by email or social media"). The other individual also offered to send appellant a photograph of himself and requested one of appellant, but appellant demurred, saying that he did not have a webcam or cell phone. The third cybertip concerned a much briefer conversation between appellant and a person purporting to be 13 years old. In this exchange, it is clear that the two people had communicated previously and appellant revealed that he is "27 almost 28." Roscoe additionally references that appellant had been arrested in California as a juvenile for lewd or lascivious acts with a child under 14.

Roscoe concluded, based on his experience and training and the facts recounted above, that appellant "is a person who has a sexual interest in children," and therefore certain propensities of people with such an interest apply to appellant. Among these propensities, he noted that such people collect sexually explicit material depicting children and rarely, if ever, dispose of these materials. They correspond with people having similar interests and rarely destroy such communication. They sometimes use such materials as a way to lower the inhibitions of child victims. They "obtain, collect, and maintain photographs of

children they have been involved with," sometimes involving nudity, and rarely dispose of such photographs. Roscoe further described the use of computers by such people and how they tend to retain such data for prolonged periods of time. He explained that an offender's home is a very likely place for them to keep such materials because "a high degree of privacy is necessary to enjoy the collection and no other location can provide the level of privacy needed than one's own home."

Roscoe additionally described how forensic computer experts are able to retrieve information from computers even when the data has been deleted by the user. Roscoe further asserted that the materials requested for seizure were likely to contain sexually explicit images of children as well as information helpful to identifying exploited children and other possible offenders. In order "to ensure accuracy and completeness of such data," Roscoe requested a forensic examination by a qualified computer specialist.

### Analysis

 Roscoe's affidavit provided the following key facts which support the magistrate's conclusion that there was a "substantial chance" that contraband would be found at appellant's residence, see *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010): (1) an IP address linked directly and uniquely to appellant was used to converse with individuals online who represented themselves to be juveniles; (2) in at least some of these conversations, appellant discussed the juveniles' genitalia and expressed an interest in both seeing their naked bodies and engaging in sexual relations; (3) based on these facts and his own experience and training, Roscoe concluded that appellant is a person who has a sexual interest in children and therefore certain propensities of such people apply to appellant; (4) among these propensities, Roscoe explained that such people collect sexually

explicit material depicting children and rarely, if ever, dispose of these materials; (5) appellant expressed a clear desire to see explicit images of minors, discussed sexting with one of the purported juveniles, and asked another if the juvenile would send a photograph if appellant provided his email address; and (6) appellant was previously arrested for improper conduct with a juvenile. Roscoe's affidavit therefore established not only that appellant had an interest in children sexually but also that he had a history of at least to some degree acting on that interest, engaging in sexual conversations with minors and seeking images of them naked. It further established that appellant was likely to be keeping child pornography—the possession of which is prohibited by law—at his residence. *See* Tex. Penal Code § 43.26.

Appellant's argument that Roscoe's affidavit failed to provide probable cause relies heavily on a Ninth Circuit case, *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990), as well as two Texas Courts of Appeals opinions citing it, *Theis v. State*, No. 03-04-00614-CR, 2005 WL 3076935 (Tex. App.—Austin Nov. 17, 2005, no pet.) (mem. op., not designated for publication), and *Taylor v. State*, 54 S.W.3d 21 (Tex. App.—Amarillo 2001, no pet.). Each is readily distinguishable.

The affidavit at issue in *Weber* noted that two advertisements addressed to the defendant had been seized by a customs inspector who described them as "apparently" child pornography. 923 F.2d at 1340. The defendant was notified of the seizure but did not attempt to collect the items. *Id.* Subsequently, customs sent an "undercover test advertisement" of child pornography to the defendant, and he placed an order for four photographs. *Id.* The *Weber* affidavit additionally provided a general description of the proclivities of pedophiles

and child pornography collectors; however, in finding the affidavit insufficient to establish probable cause to search the defendant's residence, the Ninth Circuit emphasized that not "even a conclusory recital" was made in the affidavit to place the defendant in the category of pedophiles and child pornography collectors. *Id.* at 1341. In contrast here, Roscoe expressly concluded that appellant's conduct established him to be a person with a sexual interest in children such that the information Roscoe provided regarding such people also pertained to appellant. *See, e.g., United States v. Gourde*, 440 F.3d 1065, 1073-74 (9th Cir. 2006) (distinguishing *Weber* in part because affiant in *Gourde* expressly linked defendant to generalized profile of child pornography collector).

The investigation in *Theis* began when a juvenile made allegations of sexual impropriety against a sheriff's deputy. 2005 WL 3076935, at *1. Similar to the problem in *Weber*, the affiant in *Theis* provided two pages of information regarding the characteristics of people who sexually exploit children but then failed to link those characteristics to the defendant. *Id.* at *2, 5. Moreover, the affiant relied primarily on information from a particular author and did not detail his own training or expertise. *Id.* The affiant further failed to link the juvenile's complaint and description of the house where the events allegedly occurred to the defendant or the residence that was sought to be searched. *Id.* at *5. Here, Roscoe's affidavit painstakingly provided his own training and experience, expressly linked appellant to the propensities of people who have a sexual interest in children, and tied appellant uniquely to the online chats that Roscoe used, in part, to reach his conclusion.

Somewhat similar to the present case, the investigation in *Taylor* began with an online "chat room." 54 S.W.3d at 22. An undercover officer in *Taylor* joined a chat room discussing "sexual activity involving children" and attempted to procure information leading to suspects allegedly sending child pornography over the internet. *Id.* The Amarillo Court of Appeals, however, determined that the undercover officer's affidavit failed to establish probable cause to search the defendant's home due to a long list of problems, including, most notably, that the officer had failed to exclusively link a chat room screen name to the defendant and failed to establish that the defendant was a pedophile such that the generalized information provided regarding pedophiles might apply to the defendant. *Id.* at 24-26. Again, in his affidavit, Roscoe painstakingly tied appellant to a unique IP address and supported his conclusion that the generalized information presented in fact applied to appellant. *See State v. Stone*, 137 S.W.3d 167, 177 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (distinguishing *Taylor* on ground that affiant had sufficiently linked screen name to suspect).

Appellant also cites *Bradshaw v. State*, 40 S.W.3d 655 (Tex. App.—San Antonio 2001, pet. ref'd), in support of his position. In *Bradshaw*, officers attempted to establish probable cause to search a suspect's home by showing that the suspect was a known drug dealer and stating that drug dealers often maintain large quantities of cash and other documentary evidence in their homes. *Id.* at 661. The San Antonio Court of Appeals determined that the statement was too general to support issuance of a warrant for the defendant's home. *Id.* Here, Roscoe established not only that appellant was a person with a sexual interest in children and that such people tend to maintain child pornography images in their homes, Roscoe further directly tied appellant's home computer to his communications of a sexual nature with individuals purporting to be children. Indeed, Roscoe established that from his

home computer, appellant inquired whether one of the individuals would email him a picture of his genitals and discussed sexting with another individual. The link between appellant's home and his likely possession of contraband was stronger in this case than the link between possible evidence and the suspect's home in *Bradshaw. See Manuel v. State*, 481 S.W.3d 278, 285 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd) (distinguishing *Bradshaw* based on the conclusion that the evidence sought therein was not as likely to be in the suspect's home as were the items sought in *Manuel*).

Under the high level of deference we are to give the issuing magistrate's determinations and based on the totality of the circumstances as presented in Roscoe's affidavit, we conclude that the magistrate had a substantial basis for determining that probable cause existed for the search of appellant's home. *McLain*, 337 S.W.3d at 271-72. The trial court therefore did not err in denying appellant's motions to suppress. We overrule appellant's first issue.

### First Amendment

▮ In his second issue, appellant asserts that the salacious speech referenced in the probable cause affidavit was protected under the First Amendment and therefore could not be a basis for establishing probable cause for the search warrant. Appellant specifically argues that under the Texas Court of Criminal Appeals' opinion in *Ex parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013), such salacious communication with minors could only be the basis for probable cause if it was accompanied by an intent "to induce a minor to commit an illegal sex act." Appellant further insists that the facts presented in Roscoe's affidavit failed to show such intent. Because *Ex parte Lo* does not, in fact, support appellant's position and he cites no other au-thority and makes no other argument regarding First Amendment protections, we overrule this issue.

In *Ex parte Lo*, the Court considered the facial constitutionality of former Penal Code subsection 33.021(b), which prohibited a person from communicating online in a sexually explicit manner with a minor if the person had the intent to arouse and gratify anyone's sexual desire. *Id.* at 17. The Court concluded that subsection (b) was unconstitutionally overbroad because it restricted and punished speech based on content and was not narrowly drawn to effectuate a compelling state interest. *Id.* at 24. In its analysis, the Court specifically noted that subsection (b) would bar electronic communication relating to "many modern movies, television shows, and 'young adult' books, as well as outright obscenity, material harmful to a minor, and child pornography." *Id.* at 17. Some of the content encompassed by subsection (b) was clearly protected speech (e.g., movies and television shows and even classical literature that may be sexually explicit but not obscene) and some was clearly unprotected speech (e.g., solicitation of a minor, obscenity, child pornography); hence, subsection (b) was overbroad. *Id.* at 18-20. The court further noted with emphasis that the unprotected speech encompassed by subsection (b) was already illegal under other penal provisions. *Id.* at 19-20.

Even assuming, without deciding, that certain statements in the affidavit reflect protected speech for which appellant could not have been prosecuted under former subsection 33.021(b), we agree with the trial court's conclusions of law numbers 10, 11, and 12 that the unconstitutionality of that statute does not affect the determination that there was probable cause to issue the subject search warrant.[4] Nothing in *Ex parte Lo* indicates that a person's sexually

---

4. We note that appellant was not charged with the offense at issue in *Ex Parte Lo*.

explicit communications with minors—such as under the circumstances presented in this case—cannot be part of a probable cause analysis regarding whether the person is likely to be in possession of child pornography in their home. Appellant does not cite any other authority or make any other argument in support of his position, and research has not revealed any such authority. Accordingly, we overrule appellant's second issue.

We affirm the trial court's judgment.